NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MERVE SIRIN, MELIS BARNETT-ALPINAR and KUTAY AKYUZ, on behalf of themselves, FLSA Collective Plaintiffs and the Class, | : : : : : : | **Civil Action No. 20-7853 (SRC)** |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | |
| PORTX, INC., PETER EYUP ULU and SANDY SENAY ULU, | : : : | |
| Defendants. | : : | |

**CHESLER**, District Judge

This matter comes before the Court on Defendants' motion for partial dismissal of the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs have opposed the motion. The Court has considered the papers filed by the parties and proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the reasons expressed below, Defendants' motion to dismiss will be granted in part and denied in part.

## I.    BACKGROUND

This action has been initiated by three individuals who allege that they were misclassified as independent contractors when they were in fact employees and thus undercompensated, in violation of federal and state wage statutes. Plaintiffs Merve Sirin ("Sirin"), Melis Barnett-Alpinar ("Barnett-Alpinar"), and Kutay Akyuz ("Akyuz") (collectively "Plaintiffs") formerly worked for Defendant Portx, Inc. ("Portx"), a New Jersey logistics company engaged in the

pickup and delivery of freight-carrying intermodal containers. Portx was at all relevant times owned by Defendants Peter Ulu and Sandy Ulu, who also acted as the company's president and vice-president, respectively. The facts alleged in the Complaint are as follows:

Sirin worked for Portx from about December 2017 through August 9, 2019 as a customer service representative answering client phone calls and responding to emails. Her hours regularly exceeded forty hours per week, as she worked Monday through Friday from 8 a.m. to 7 p.m. Sirin alleges that she was paid a flat daily rate of $160.00 for her work. Sirin also alleges that her pay was docked in August 2019 for taking sick days, even though she had paid sick days available.

Barnett-Alpinar worked for Portx from about November 2018 through August 16, 2019. She also held the position of customer service representative and, like Sirin, alleges that she regularly worked between 10 and 11 hours a day, from 8 a.m. to 7 p.m., Monday through Friday. Barnett-Alpinar alleges that she was paid a flat weekly rate of $500.00, in spite of the fact that she worked in excess of forty hours a week.

Akyuz worked for Portx from about May 2018 through September 2019 performing accounting work consisting of researching and analyzing accounting data and preparing reports. He routinely worked Monday through Friday from 8 a.m. to 6:30 p.m., thus regularly exceeding forty hours of work per week. According to the Complaint, Defendants paid Akyuz a flat weekly rate of $750.00.

All three named Plaintiffs allege that they were misclassified as independent contractors, rather than employees, in spite of the fact that they had "set hours, set pay, and [were] given tools and supplies provided by the Defendants." (Compl., ¶¶ 36, 53, 66.) They claim that Portx

deprived them of proper overtime compensation, in violation of federal and state wage laws, for the time they worked in excess of forty hours per week. Plaintiffs also allege that Defendants did not keep proper records of the hours Plaintiffs worked and did not provide the wage notices and statements required by state wage laws. Further, according the Complaint, Defendants filed tax statements with the Internal Revenue Service ("IRS") which knowingly and willingly falsified Plaintiffs' status as independent contractors. Plaintiffs allege that the failure to properly classify and compensate individuals for their work, failure to maintain accurate records, and failure to report accurate tax statements was part of Portx's overall scheme to underpay wages and avoid paying employer wage taxes. The named Plaintiffs allege that this alleged wrongdoing by Defendants not only affected them but other employees of Portx.

Sirin, Barnett-Alpinar, and Akyuz initiated this putative class action in federal court on June 26, 2020, seeking relief for themselves and on behalf of a group of similarly situated employees of Portx, identified as "all non-exempt employees, including customer representatives, warehouse employees, delivery employees, packing employees, and administrative staff employed by the Defendants" on or after June 26, 2017 (as to the federal wage and hour claim) and on or after June 26, 2014 (as to the other claims) (Compl., ¶¶ 82, 85.) The Complaint pleads five counts for relief. It asserts a collective action claim for unpaid overtime, pursuant to Section 16(b) of the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (Count I). It also asserts four causes of action as putative class action claims, pursuant to Federal Rule of Civil Procedure 23(b)(3), as follows: claim under the New Jersey Wage and Hour Law ("NJWHL"), N.J.S.A. § 34:11-56a, et seq. (Count II); claim under the NJWHL for failure to provide a wage statement (Count III); claim for violation of the New Jersey Paid Sick

Leave Act, N.J.S.A. § 34:11D-1, et seq. (Count IV); and claim under 26 U.S.C. § 7434(a) for filing of fraudulent tax information returns (Count V).

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

## II.   DISCUSSION

Defendants move to dismiss the claims asserted in Counts II through V of the Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). In evaluating a motion under Rule 12(b)(6), the Court must determine whether the complaint at issue contains "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### A.   Dismissal Based on Incompatibility of Opt-In and Out-Out Class Actions

Defendants first argue that because the NJWHL and other claims for violation of state employment practices have been pled on behalf of an opt-out class under Rule 23(b)(3), they are "inherently incompatible" with the FLSA Section 16(b) claim and its opt-in collective action

mechanism. The FLSA, in relevant part, provides a private right of action for violations of the statute, including failure to pay overtime, and creates a mechanism in which employees may join together to sue their employer by affirmative consent to become a party to the suit (i.e., opt in). 29 U.S.C. § 216(b). In contrast, under Rule 23(b)(3), an action may be pursued on behalf of a class of plaintiffs who, once the action is certified, will be bound the judgment unless they affirmatively request exclusion from the class (i.e., opt out). Fed. R. Civ. P. 23(c)(3)(B). The state law class action claims, Defendant argues, must be dismissed due to the inherent incompatibility between the opt-in FLSA action and the opt-out putative class action claims.

Defendants are incorrect. The Third Circuit has addressed—and rejected—"the concept of inherent incompatibility . . . in the context of dual-filed FLSA opt-in and state law opt-out class actions where the federal court was asked to exercise supplemental jurisdiction over state law claims that paralleled the claim under the FLSA." Knepper v. Rite Aid Corp., 675 F.3d 249, 258 (3d Cir. 2012). The Third Circuit reasoned that neither the plain text of the FLSA Section 16(b) nor its legislative history supported the concept that FLSA opt-in actions are incompatible with opt-out class actions for relief under state wage and hour laws. Id. at 259-60. Defendants try to distinguish Knepper on the basis that the state law class action claims under review in that case had been brought before the federal court under the Class Action Fairness Act ("CAFA") and thus were grounded in diversity jurisdiction, independent of the federal question jurisdiction supplied by the FLSA claim. Thus, Defendants argue, the Knepper court permitted the opt-out class action claims for relief under state law to proceed in the same suit as the FLSA claim because it found there was "otherwise available federal jurisdiction" over the state law claims. See id. at 262. Defendants' argument is misplaced. The Knepper court did note that there was

5

independent subject matter jurisdiction over the state law class action claims by virtue of CAFA and thus concluded that dismissal of the claims for lack of supplemental jurisdiction was inapposite. Id. at 261. However, the Court of Appeals made this observation in the context of distinguishing its decision in DeAsencio v. Tyson Foods, Inc., 342 F.3d 301 (3d Cir. 2003), which Rite Aid, the defendant in Knepper, had argued supports the concept of inherent incompatibility. Id. at 261. The Knepper court made clear that DeAsencio did not so hold. Id. Rather, DeAsencio, the Knepper court stated, was based in a supplemental jurisdiction analysis which led to the conclusion that due to novel issues of state law and the inordinate size of the state-law class, the exercise of jurisdiction over the state law claims in that case was inappropriate under 28 U.S.C. § 1367. Id. The Third Circuit quoted, and agreed with, another circuit's observation that "*DeAsencio* represents only a fact-specific application of well-established rule, not a rigid rule about the use of supplemental jurisdiction in cases combining an FLSA count with a state-law class action." Id. (quoting Ervin v. OS Restaurant Svcs., Inc., 632 F.3d 971, 981 (7th Cir 2011)).

The Knepper court's holding was clear:

> In sum, we disagree with the conclusion that jurisdiction over an opt-out class action based on state-law claims that parallel the FLSA is inherently incompatible with the FLSA's opt-in procedure. Nothing in the plain text of § 216(b) addresses the procedure for state-law claims, nor, in our view, does the provision's legislative history establish a clear congressional intent to bar opt-out actions based on state law. We join the Second, Seventh, Ninth, and D.C. Circuits in ruling that this purported "inherent incompatibility" does not defeat otherwise available federal jurisdiction.

Id. at 261-62. Accordingly, the Court will not dismiss the state law claims based on Defendants' argument that they are inherently incompatible with the FLSA opt-in claim.

**B.**    **Dismissal For Lack of Supplemental Jurisdiction**

The Court, then, must turn to examine the "otherwise available jurisdiction" over the state law claims, which in this case is authorized by 28 U.S.C. § 1367, the supplemental jurisdiction statute. Defendants argue that the Court should decline from exercising supplemental jurisdiction over the state law claims. The Court disagrees.

The Court notes that it clearly has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff's FLSA claim—not challenged in this motion to dismiss— indisputably arises under federal law. Jurisdiction over the state claims is conferred by 28 U.S.C. § 1367, the supplemental jurisdiction statute which provides that, in actions over which a district court has original jurisdiction, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Interpreting the standard set forth in Section 1367(a), the Third Circuit held that "three requirements must be satisfied before a federal court may exercise supplemental jurisdiction." MCI Telecomm'ns Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1102 (3d Cir. 1995). One, the federal claim must be of sufficient substance to confer subject matter jurisdiction. Id. Two, the state and federal claims must be based on a common nucleus of operative facts. Id. Three, the claims would ordinarily be expected to be tried in one proceeding. Id. Similarly, in DeAsencio, the Third Circuit explained that, in assessing whether a court should exercise supplemental jurisdiction over state law claims when brought alongside an FLSA collective action:

> A court must examine the scope of the state and federal issues, the terms of proof required by each type of claim, the comprehensiveness of the remedies, and the ability to dismiss the state claims without prejudice to determine whether the state claim constitutes the real body of the case. This necessarily is a case-specific analysis.

DeAsencio, 342 F.3d at 312.

Applying these considerations to this action, the Court finds that it is appropriate to exercise supplemental jurisdiction over the claims for unpaid overtime and for unpaid sick leave under New Jersey law. The core of this action consists of Defendants' alleged failure to classify Plaintiffs as employees and afford them the related employment protections under both federal and state law. The Court's original jurisdiction is firmly rooted in the FLSA. Plaintiffs' state law claims, in turn, are closely related to the FLSA claim. The claims under the NJWHL arise from the same allegedly unlawful wage and hour practices on which the FLSA claim is based. Indeed, Defendants concede that the NJWHL claim for overtime violations "essentially mimics Plaintiff's FLSA claim set forth in Count I." (Def. Br. at 5.) The claim under the New Jersey Paid Sick Leave Act, while not identical to the FLSA, is also concerned with practices at Portx which allegedly violated employee protection laws, and as will be discussed below, the Paid Sick Leave Act is intertwined with the NJWHL. Given the similarity of issues presented in the claims, as well as the factual background, documentary evidence, and witnesses testimony, the federal and state claims in the Complaint would be expected to be tried in the same proceeding.

Nevertheless, Defendants maintain that the Court should refrain from exercising supplemental jurisdiction, as it is authorized to do pursuant to 28 U.S.C. § 1367(c). Under that provision, a district court may decline to exercise jurisdiction under 1367(a) in the following circumstances:

      (1)  the claim raises a novel or complex issue of State law,

      (2)  the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

      (3)  the district court has dismissed all claims over which it has original jurisdiction, or

      (4)  in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Defendants first contend that the exception set forth in subsection (4) applies because the dichotomy presented by litigating and trying an opt-in action and an opt-out action constitutes a compelling reason to decline jurisdiction. Later, in their reply brief, they contend that the state claims will substantially predominate over the FLSA claim because the claim for unpaid sick leave will require discovery of facts and examination of issues unrelated to wage and hour matters and because the state wage and hour claim will expand the scope of discovery. Both of Defendants' bases for urging this Court to decline supplemental jurisdiction over the state claims are unavailing. Defendants fail to persuade the Court that, given the overlap of issues, facts, and parties, there is a compelling reason to, in essence, sever the state claims from the FLSA action and create a situation in which two separate but duplicative actions must proceed, in federal court and in state court. And, for the same reason, there is no indication that the state claims predominate over, or threaten to overwhelm, the FLSA portion of this action.

### C.     Claim For Failure To Provide Accurate Wage Statement (Count III)

     Next, Defendants argue that the claim for failure to provide a wage statement, asserted in Count III, should be dismissed because it is not a cognizable cause of action under the NJWHL. In Count III, the Complaint alleges that Defendants "have willfully failed to supply Plaintiffs with an accurate statement of wages as required by New Jersey Wage and Hour Law, N.J.S.A.

34:14-56a *et seq*.," and then proceeds to list the various pieces of information the wage statement should have contained. (Compl., ¶ 102.) Defendants correctly point out that the NJWHL imposes no such requirement.

Defendants surmise that Plaintiffs may be invoking N.J.S.A. § 34:11-4.6, a provision of the New Jersey Wage Payment Law which in fact does require, among other things, that employers disseminate certain information related to wages and furnish employees with a wage statement setting forth gross and net wages, rate of pay, and hours worked. In their opposition brief, Plaintiffs confirm their reliance on this provision and further argue that the New Jersey Wage Payment Law entitles them to recover unpaid wages. The Complaint filed by Plaintiffs, however, does not attempt to assert a claim under either N.J.S.A. § 34:11-4.6 specifically or the New Jersey Wage Payment Law generally. It fails to provide any notice of the source of the rights asserted and the statutory cause of action invoked. The Complaint itself fails to state a claim under the New Jersey Wage Payment Law, and it is well-established that a plaintiff cannot amend a pleading through a brief in opposition to a motion to dismiss. Federico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007).

However, even if the Court liberally construes the Complaint to plead for relief under the New Jersey Wage Payment Law, based on the factual allegations that Defendants have failed to provide an accurate wage statement, Plaintiffs' claim would nevertheless fail to meet the requirements of Rule 8(a). The New Jersey Wage and Compensation Law authorizes a private cause of action as follows:

> If any employer fails to pay the full amount of wages to an employee
> agreed to or required by, the provisions of article 1 of chapter 11 of Title
> 34 . . ., the employee may recover in a civil action the full amount of any
> wages due, or any wages lost because of any retaliatory action . . ., plus an

10

> amount of liquidated damages equal to not more than 200 percent of the
> wages lost or of the wages due, together with costs and reasonable
> attorney's fees as are allowed by the court . . ..

N.J.S.A. § 34:11-4.10(c). The statute recognizes a cause of action for failure "to pay the full

amount of wages" but authorizes no civil action for a failure to provide a wage statement, the

violation claimed by Plaintiffs according to the facts alleged in the Complaint.[1]

In short, neither the NJWHL nor the statute invoked in the opposition brief set forth a

plausible claim for failure to provide Plaintiffs with an accurate wage statement. Accordingly,

Count III of the Complaint will be dismissed.

### D.    Claim For Failure To Pay Sick Leave (Count IV)

The claim in Count IV, for violation of the New Jersey Paid Sick Leave Act, is in part

based on the violation of notice and records requirements. However, the claim is also based on

the failure to pay sick leave and seeks recovery of unpaid sick leave wages. The New Jersey Paid

Sick Leave Act does, in fact, recognize this as a valid basis for recovery but appears to subsume

the claim within the cause of action created by the NJWHL. The pertinent provision states that:

> Any failure of an employer to make available or pay earned sick leave as
> required by this act, or any other violation of this act, shall be regarded as
> a failure to meet the wage payment requirements of the "New Jersey State
> Wage and Hour Law" . . . and remedies, penalties, and other measures
> provided by that act . . . for failure to pay wages or other violations of that
> act shall be applicable, including, but not limited to, penalties provided
> pursuant to sections 23 and 25 of that act . . . and civil actions by
> employees pursuant to section 26 of that act . . ..

---

[1] In contrast, Defendants point out, the statute does recognize a knowing violation of any of its provisions, including notice and reporting requirements, as a disorderly persons offense and imposes a corresponding fine. See N.J.S.A § 34:11-4.10(a).

N.J.S.A. § 34:11D-5. Moreover, while Defendants are correct that the statute does not appear to authorize a private action for failure to keep records *per se*, it does provide that proper recordkeeping bears on the question of the whether the employer has abided by its obligation of paid sick leave. It states:

> If an employee makes a claim that the employer has failed to provide earned sick leave required by this act and the employer has not maintained or retained adequate records documenting hours worked by the employee and earned sick leave taken by the employee or does not allow the department access to the records, it shall be presumed that the employer has failed to provide the earned sick leave, absent clear and convincing evidence otherwise.

N.J.S.A. § 34:11D-6. Accordingly, insofar as Count IV seeks to recover unpaid wages, for failure to pay earned sick leave, and associated penalties, the claim appears to be cognizable under the New Jersey Paid Sick Leave Act.

Examining the law together with the factual allegations of the Complaint, the Court finds that Plaintiff Sirin has stated a plausible claim under the New Jersey Paid Sick Leave Act, while the other two named Plaintiffs have not. Sirin alleges that she was docked pay in August 2019 for taking sick days, even though, she asserts, she had accrued paid sick leave. Barnett-Alpinar and Akyuz, in contrast, make no such allegations that they were deprived of wages based on Defendants' failure to pay sick leave. Thus, Count IV will be dismissed, without prejudice, only as to Alpinar and Akyuz.

### E.   Claim For Fraudulent Tax Information Return (Count V)

As to Count V, for violation federal tax statute 26 U.S.C. § 7434(a), Defendants' motion to dismiss will be granted. Plaintiffs base this claim on the allegation that Defendant willfully

filed fraudulent information returns by issuing Plaintiffs 1099 statements, which identify them as independent contractors, rather than W-2 forms, which correspond to employees.

Section 7434(a) provides, in relevant part, that "[i]f any person willfully files a fraudulent information return *with respect to payments purported to be made* to any other person, such other person may bring a civil action for damages against the person so filing such return." 29 U.S.C. § 7434(a) (emphasis added). After examining the text of the statute, and interpreting Section 7434(a) in the context of the other subsections of that provision, the United States District Court for the Eastern District of Virginia concluded, in Liverett, that "§ 7434(a) creates a private cause of action only where an information return is fraudulent with respect to the amount purportedly paid to the plaintiff." Liverett v. Torres Advanced Enterprise Solutions LLC, 192 F. Supp. 3d 648, 653 (E.D. Va. 2016). Accordingly, the Liverett court dismissed a Section 7434 claim predicated on "the allegation that defendant willfully misrepresented the status of its employees by issuing them Form 1099s instead of Form W-2s" Id. at 650, 655. The fraud targeted by the Section 7434(a), by its terms, pertains to the amount purportedly paid, not the plaintiff's employment status. Id. at 654-55; see also Derolf v. Risinger Bros. Transfer, Inc., 259 F. Supp. 3d 876, 885 (C.D. Ill. 2017) (holding that "a proper § 7434 violation must be predicated on a purported misstatement of amount" and rejecting a claim based on a return which identified a person as independent contractor rather than employee).

This Court agrees with the Liverett court's statutory analysis and its conclusion, which it summarized as follows:

> [N]either unambiguous text, statutory context, nor congressional purpose support plaintiff's position that defendant's alleged willful filing of Form 1099s instead of Form W-2s is actionable under § 7434(a). Thus, the gap between what Congress meant and what Congress said is readily bridged,

> and § 7434(a) must be read to provide a private cause of action only where a defendant willfully files information returns that misrepresent the amount of payments made.

Liverett, 192 F. Supp. 3d at 655. Accordingly, Plaintiffs' claim that fraudulent returns were filed because Plaintiffs were knowingly misrepresented to be independent contractors fails to state a plausible violation of Section 7434(a).

Plaintiffs nevertheless argue that their Section 7434 claim is sufficient because the Complaint alleges not only that the wrong information statements were filed, but that the returns were fraudulent insofar as Plaintiffs were not fully compensated for the hours they worked, including overtime. This argument conflates the allegedly unlawful failure to pay wages with the commission of fraud. The amount Plaintiffs claim they should have been paid, under federal and state wage and hour laws, does not bear on the question of whether the amount they were in fact paid was accurately reported to the IRS. The Complaint does not allege that the returns filed misrepresented the amount of payments made to Plaintiffs. As such, it fails to plead a sufficient claim for violation of 29 U.S.C. § 7434(a), and Count V will accordingly be dismissed.

**F.    Dismissal of Class Claims**

Finally, the Court addresses Defendants' argument that the Court should dismiss certain class claims because the claims fail to meet the commonality and typicality requirements of Federal Rule of Civil Procedure 23(a). Defendants argue that because the named Plaintiffs consist of two customer service representatives and one accounting worker, the allegations that their claims share common questions of law and fact with regard to other Portx employees included in the putative class definition, or are typical of the putative class claims, are merely

14

conclusory. There is no indication, Defendants argue, of the hours these other individuals worked or the wages they were paid.

The Court finds that it is premature to address these class issues on a motion to dismiss. Plaintiffs allege that they, like the various other individuals identified in the putative class, worked in various capacities and under various job titles for Defendants, that they were all non-exempt employees (that is, covered by the wage and hour protections of the FLSA and NJWHL), and that all class members were subjected to the same unlawful failure to receive adequate wages for hours worked. The Complaint meets the minimal requirements to plead a putative class action at this stage of litigation. The class issues raised by Defendants would be more appropriately handled, after discovery, in connection with the question of whether the class may be certified.

### III.   CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion to dismiss as to Counts III and V. Count IV will be partially dismissed. The remainder of the motion to dismiss will be denied. An appropriate Order will be filed.

        s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated:  October 22, 2020